**Jay L. POOLE, Appellant (Plaintiff),**

v.

**Stephen D. CLASE, Appellee (Defendant),**

**and**

**Vickie Land, Cross-Appellant (Defendant).**

**No. 2–582A137.**

Court of Appeals of Indiana, Second District.

Nov. 1, 1983.

Rehearing Denied Dec. 15, 1983.

---

Michael K. Sutherlin, Indianapolis, for appellant.

Richard E. Aikman, Jr., Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for appellee and cross-appellant.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant Jay L. Poole (Poole) appeals from a dismissal of his claim

against defendant-appellee Stephen D. Clase (Clase), alleging the trial court improperly decided questions involving Indiana's Tort Claims Act, Ind.Code 34–4–16.-5–1 to –19 (1982) (Tort Claims Act), and the doctrine of judicial immunity. Defendant-cross-appellant Vickie Land (Land) raises similar issues in her cross-appeal from the trial court's order granting Poole's motion to correct error and reinstating Poole's claim against Land.

We affirm in part and reverse in part.

## FACTS

Because this case comes to us in a motion to dismiss setting, we must take the following facts, as alleged in Poole's complaint, as true:[1] Poole, age seventeen, received a traffic citation for exceeding the speed limit and was to appear in the town court of Edgewood on May 18, 1978. Under Ind. Code 18–1–14–2 (1976), Clase served as both judge and clerk of that court. Poole did not appear before Clase on the assigned date because he misplaced his ticket. Consequently, on May 26, Clase issued a warrant for the arrest of Poole.

When Poole later found the traffic citation and paid his fine on July 6, 1978, Clase stated that the warrant would be recalled and that the matter was closed. However, the warrant was not recalled, and Poole was arrested, transported to the Madison County jail, and detained in a general holding cell. While incarcerated, Poole was attacked by inmates who stripped, assaulted, and attempted to sodomize him.

Poole filed a complaint for damages against Clase, in his official capacity as judge and clerk of the town court of Edgewood and individually, and against Land in her official capacity as an assistant to the court clerk and individually. Poole alleged that Clase and Land negligently failed to recall the warrant and that as a direct and proximate result of such negligence, he was wrongfully arrested, detained, and attacked. In response to the complaint, Clase and Land filed a motion to dismiss under Ind.Rules of Procedure, Trial Rule 12(B)(6), claiming that Poole had failed to comply with the notice requirements of the Tort Claims Act under IC 34–4–16.5–7 (the notice provision) and that they were protected by the doctrines of judicial immunity and quasi-judicial immunity.

The trial court granted the motion as to all claims. Thereafter, oral argument was held on Poole's motion to correct error. The trial court affirmed its earlier ruling and denied Poole's motion to correct error as to his claim against Clase, concluding that Clase, as judge, was protected under the doctrine of judicial immunity and under IC 34–4–16.5–3 (enumerating certain acts for which a public employee may not be held liable).[2] As to Poole's claim against Land, however, the trial court concluded that a motion to dismiss should not have been granted because a determination of Land's duties could not be made from the face of the complaint and therefore the applicability of quasi-judicial immunity could not be conclusively resolved. Poole's motion to correct error as to Land was

---

1. *See Kiyose v. Trustees of Indiana University,* (1975) 166 Ind.App. 34, 333 N.E.2d 886.

2. The pertinent provisions of IC 34–4–16.5–3 relied upon by the trial judge are as follows: "A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
. . . .
(5) the initiation of a judicial or administrative proceeding;
(6) the performance of a discretionary function;
(7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforce-

ment constitutes false arrest or false imprisonment;
. . . .
(9) the act or omission of someone other than the governmental entity employee;
(10) the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law . . . ."
*Record* at 169. The trial court did not reach the parties' contentions regarding the Tort Claims Act notice provision.

granted, and the claim against Land was reinstated.

## ISSUES

Poole and Land raise similar issues concerning the Tort Claims Act which may be resolved by answering the following question:

1. Are Poole's claims barred by the notice provision of the Tort Claims Act?

Poole's second issue concerns the question of judicial immunity:

2. Did the trial court err in granting Clase's motion to dismiss based upon the doctrine of judicial immunity?

Finally, Land's second issue is as follows:

3. Did the trial court err in reinstating Poole's cause of action against Land because she is protected by the doctrine of quasi-judicial immunity?

## DECISION

ISSUE ONE—Are Poole's claims barred by the notice provision of the Tort Claims Act?

CONCLUSION—We need not address the parties' various contentions on this issue because we conclude the notice provision of the Tort Claims Act has no applicability to suits brought against individual public employee tort-feasors.

■ Contrary to the contentions of the defendants, and contrary to Poole's concession, Poole was not required to file notice of his claim under the Tort Claims Act. The plain language of IC 34–4–16.5–7 is that "*a claim against a political subdivision is barred* unless notice is filed with the governing body of that political subdivision within one hundred eighty days after the loss occurs." (Emphasis supplied). Those simple words are clear, and it is not our prerogative to vary from the plain meaning of an unambiguous statute. *Burks v. Bol-*

*erjack,* (1981) Ind., 427 N.E.2d 887; *Indiana State Highway Comm'n v. White,* (1973) 259 Ind. 690, 291 N.E.2d 550. Political subdivisions and public employees thereof are separately defined under the Tort Claims Act.[3] And there is no other provision in the Act or in its history which would lead us to conclude that the notice provision applies to suits against individual public employees. *See Geyer v. City of Logansport,* (1977) 267 Ind. 334, 370 N.E.2d 333 (interpreting a prior version of the Tort Claims Act and concluding that the notice provision did not apply in suits against individual employee tort-feasors).

This case is unlike the situation posed by *Burks, supra,* and *Coghill v. Badger,* (1981) Ind.App., 418 N.E.2d 1201, *trans. denied.* In those cases, judgment was properly entered in favor of the individual public employee because summary judgment had been entered in favor of the political subdivision for failure to give notice under the notice provision. Similarly, in *Board of Comm'rs v. Nevitt,* (1983) Ind.App., 448 N.E.2d 333 (petition to transfer pending), a claim against an individual public employee was barred because the plaintiff had voluntarily dismissed his claim against the political subdivision. In all three cases, the result was mandated by a separate provision of the Tort Claims Act, namely that "[a] judgment rendered with respect to or a settlement made by a governmental entity bars an action by the claimant against an employee whose conduct gave rise to the claim resulting in that judgment or settlement." IC 34–4–16.5–5(a).

■ Thus, the claims against individual tort-feasors were barred in the above-cited cases because a judgment had been rendered in favor of the governmental entity. *Burks* and *Coghill* do *not* stand for the proposition that a claim against a public

---

3. " 'Employee' and 'public employee' means a person presently or formerly acting on behalf of a governmental entity whether temporarily or permanently or with or without compensation, including members of boards, committees, commissions, authorities and other instrumentalities of governmental entities, and elected public officials ...."

IC 34–4–16.5–2. "Governmental entities" are the state or a political subdivision of the state, and a "political subdivision" is a county, township, city, town, separate municipal corporation, special taxing district, state college or university, city or county hospital, school corporation, or a board or commission of one of the above entities. *Id.*

employee is barred absent compliance with the notice provision. Those cases only stand for the proposition that a claim against the public employee is barred if a judgment is rendered in favor of the governmental entity, even if that judgment is rendered on the basis of the plaintiff's failure to give the governmental entity notice.

We recognize the apparent inconsistency, as did the third district, in this interpretation:

> "Finally, we note that while the plain language of section 5(a) could be applied to bar a claim against a governmental employee individually where a judgment had been entered in favor of the political subdivision on the ground of failure to comply with the notice requirements, this section has no apparent application to circumstances where the employee is sued but no action was commenced against the governmental entity. That would result in an absurd consequence. A claimant who had failed to give notice could properly sue the employee individually, but only in the event he had not sued or joined the governmental entity as a defendant."

*Burks v. Bolerjack,* (1980) Ind.App., 411 N.E.2d 148, 151. However, we agree with Justice Hunter's analysis of the inconsistency:

> "However that may be, it is not our prerogative to vary from the plain meaning of the unambiguous terms employed by the legislature. The language employed in a statute is deemed to have been used intentionally."

*Burks, supra,* 427 N.E.2d at 890 (citations omitted) (vacating the Court of Appeals opinion on the issue of whether an action against a public employee is barred when judgment has been granted to the employing governmental entity on the basis of notice requirements).

In the present case, Poole did not assert a claim against the town of Edgewood, and there are no facts in the record from which we could conclude that a prior judgment or settlement was entered in favor of the town.[4] Therefore, there is no judgment or settlement in favor of the political subdivision which would bar Poole's suit against Clase and Land, and because notice was not required, Poole's claims cannot be barred on this basis.

ISSUE TWO—Did the trial court err in granting Clase's motion to dismiss based upon the doctrine of judicial immunity?

PARTIES' CONTENTIONS—Poole relies upon the maxim that the doctrine of judicial immunity only bars liability for judicial acts. Thus, Poole argues, Clase may be held accountable because his failure to recall the arrest warrant was negligent nonfeasance of a purely ministerial function. Clase responds that, as a judicial officer, he is absolutely shielded from liability because he had jurisdiction of Poole's case.

CONCLUSION—Clase's failure to recall the arrest warrant is not protected from suit by the doctrine of judicial immunity because, as clerk of the town court, he may have failed to carry out a purely ministerial act.

This case requires analysis of the time-honored doctrine of judicial immunity, long recognized in Indiana. *See, e.g., Kress v. State ex rel. Wagoner,* (1878) 65 Ind. 106. Perhaps Professor Prosser has best described the doctrine and the rationale supporting it:

> "[J]udges always have been accorded complete immunity for their judicial acts within the jurisdiction of courts of justice, even when their conduct is corrupt, or malicious and intended to do injury. Even though a cynic might be forgiven for pointing out just who made this rule, the reason is of course not a desire to

---

**4.** Numerous references were made, in memoranda and during hearings, to a prior federal suit involving the town of Edgewood. In addition, a copy of a federal court judgment dismissing a claim by Poole against the town was attached to Poole's motion to correct error; however, the exhibit was not properly certified as required by IC 34–1–17–3. Such "evidence" is insufficient for us to conclude that Poole's claims are barred by a prior federal court judgment in favor of the town.

protect the corrupt, malicious or misbehaving official, but rather the necessity of preserving an independent judiciary, who will not be deterred by the fear of vexacious suits and personal liability, together with the manifest unfairness of placing any man in a position where his judgment is required, and at the same time holding him responsible according to the judgment of others."

*W. Prosser, Handbook of the Law of Torts* 987–88 (4th ed. 1971). Thus, recognizing the wisdom of this doctrine, we are called upon to decide whether Judge Clase, who by statutory quirk also served as clerk of his own court, may be held liable for failure to recall Poole's arrest warrant.

We begin with an examination of the elements which establish judicial immunity. A recent supreme court case, *Cato v. Mayes,* (1979) 270 Ind. 653, 388 N.E.2d 530, instructs us that

"[t]he test by which the question of the liability of a judicial officer is to be governed is twofold: (1) was the act complained of an exercise of judicial authority? and (2) did the court have jurisdiction of the parties and subject matter? If these two questions are answered affirmatively, judicial immunity will be accorded . . . ."

*Id.* at 652, 388 N.E.2d at 532 (citations omitted; emphasis supplied). *See also State ex rel. Egan v. Wolever,* (1890) 127 Ind. 306, 26 N.E. 762, *overruled on other grounds, Peters v. Koepke,* (1901) 156 Ind. 35, 59 N.E. 33. There is no question in this case that Judge Clase had jurisdiction over Poole and the subject matter. Therefore, the precise question to be answered is whether Clase's action (or inaction) was solely an exercise of judicial authority. It is our view that it was not.

In making this determination, we are guided by the statute that established Clase's power and authority:

"The judicial power of every town may be vested in a town court . . . . The officers thereof shall be a judge and a bailiff. *The judge of said court shall also act as clerk of the court* . . . ."

IC 18–1–14–2 (1976) (emphasis supplied) (repealed effective December 31, 1979 by 1978 Ind.Acts, Pub.L. No. 2, § 1833). This statute does not appear to violate the general proscription of the receipt by public officials of two salaries. Apparently, Clase only received one salary, that being compensation for his services as judge. *See* IC 18–1–14–3 (1976).[5] The statute does, however, enable us to define the nature of Clase's duties as judge *and* court clerk.

The definition of a judicial act relates "to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman,* (1978) 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331. The acts of clerks, on the other hand, are purely ministerial functions separate and distinct from judicial action. Indiana precedent demonstrates this distinction and mandates our finding that, if Poole's damages were caused by Clase's negligence while performing as court clerk, a cause of action exists in favor of Poole.

The issuance of writs by clerks is a ministerial and not a judicial act. *Steve v. Colosimo,* (1937) 211 Ind. 673, 7 N.E.2d 983. And although the ordering of an arrest warrant *by a judge* is a discretionary act, *Cato, supra,* "[i]t is the general rule of law that a clerk is a ministerial officer only and cannot exercise a judicial function." *Stine v. Shuttle,* (1962) 134 Ind.App. 67, 75, 186 N.E.2d 168, 173.[6] Thus, a complaint for false arrest against a court clerk empowered to "issue all process" stated a cause of action because the issuance of a warrant *by a clerk* "is a ministerial act." *Id.* at 75–76, 186 N.E.2d at 173. *See also Dalton v. Hysell,* (1978) 56 Ohio App.2d 109, 381 N.E.2d

---

5. Repealed effective December 31, 1979 by 1978 Ind.Acts, Pub.L. No. 2, § 1833.

6. *Stine* was impliedly overruled on other grounds in *Brinkman v. City of Indianapolis,* (1967) 141 Ind.App. 662, 231 N.E.2d 169, *trans. denied.*

955. The distinction is not one of mere form or title. "Whether an act is or is not judicial is determined by the character of the act and not by the character of the agent." 46 *Am.Jur.2d Judges* § 83 (1969).

Thus, the character of Clase's acts, as disclosed at trial, will determine whether he is immune from suit. If the facts at trial show that, after making a judicial decision to recall the warrant and after recording the order book entry, he shed his robe and descended from the heights of judicial discretion on Mount Olympus to the lowlands of his ministerial acts as a clerk, Clase was not insulated by immunity. In such a setting, the remaining steps necessary to recall the warrant were to be performed by him as court clerk. Therefore, the complaint states a cause of action against Clase *as clerk,* and we reverse solely on that basis.[7]

ISSUE THREE—Did the trial court err in reinstating Poole's cause of action against Land because she is protected by the doctrine of quasi-judicial immunity?

PARTIES' CONTENTIONS—Land argues that a form of quasi-judicial immunity is afforded to officers of the court. Therefore, she asserts, even if she failed to perform a purely ministerial duty, she is still protected by this doctrine. Poole counters with the argument that quasi-judicial immunity should not be afforded to court employees who are guilty of nonfeasance or misfeasance.

CONCLUSION—Land's inaction is not protected by the umbrella of quasi-judicial immunity.

 At least one Indiana case provides a point of reference for deciding this issue. In *Alexander v. Gill,* (1891) 130 Ind. 485, 30 N.E. 525, our supreme court held a justice of the peace was immune from suit for damages resulting from a removal of the plaintiff from his premises after an adverse judgment against him as a hold-over tenant. The court recognized that the justice

of the peace was immune because he was acting in the exercise of a judicial function and because he had jurisdiction of the parties and subject matter. In addition, the court recognized that the constable who executed the eviction was immune as well, concluding that

> "[i]f the officer, the justice, or the judge who makes the decision is protected from liability and damages resulting from his erroneous decision, *we are unable to see any good reason why the officer, the constable, who executes the writ that the justice is protected in issuing, should not also be protected from liability on account of his acts in the execution of the writ . . . ."*

*Id.* at 489–90, 30 N.E. 525 (emphasis supplied).

The difference between the *Alexander* case and the case before us is obvious. In *Alexander,* quasi-judicial immunity was afforded to the constable because he did nothing more than carry out a discretionary, protected decision of a justice of the peace. In contrast, Land would have us afford her immunity for her *failure* to execute a judicial decision. To so broadly define the quasi-judicial immunity afforded to clerks, however, would not be in line with *Alexander* and would ignore the clear purpose of the doctrine.

*Lockhart v. Hoenstine,* (3d Cir.1969) 411 F.2d 455, *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244, provides an excellent analysis of the quasi-judicial immunity afforded to court clerks. Recognizing that the clerk is compelled to obey the mandate of a court, the third circuit was

> "cognizant of the manifest unfairness of subjecting one to suit as a consequence of action taken at the direction of officials over whom the individual actor has no power or control."

*Id.* at 460. Thus, the limited immunity given court clerks is probably better de-

---

7. We need not address Poole's contention that, as a judge, Clase could be liable for failure to carry out a ministerial act. *But see* 32 Am. Jur.2d Judges § 83 (1969) ("It is said . . . that *all* the acts of a judge of record, which he does as such, are judicial. The word 'judicial', when applied to such a judge, means *every* act done by him in his judicial capacity as judge . . . .") (emphasis supplied).

scribed as "derivative" as opposed to "quasi-judicial."[8] It stems from a desire to protect officers of the court who do nothing more than obey court orders for which the issuing judge would be held immune. Such a rationale in no way supports the protection of ministerial officers who are guilty of misfeasance or nonfeasance in the undertaking of their duties.

Land's failure to recall the warrant was not the performance mandated by a protected judicial decision. Instead, according to the complaint, she neglected to execute a judicial decision. Such neglect was nonfeasance of a ministerial act for which she may be held liable, assuming, as we must, that to perform the duty would have been within the scope of her employment. Therefore, Poole's complaint stated a cause of action, and the trial court did not err in reinstating Poole's claim against Land.

The trial court's judgment dismissing Poole's claim against Clase is reversed, the decision reinstating Poole's claim against Land is affirmed, and this cause is remanded for further proceedings not inconsistent with this opinion.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.

---

**8.** The term "quasi-judicial" is much broader than the type of action we are dealing with in this case because it is the term "applied to the action, *discretion,* etc., of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise *discretion of a judicial nature."* *Black's Law Dictionary* 1411 (rev. 4th ed. 1968) (emphasis supplied). As we have noted earlier, court clerks exercise primarily ministerial functions. Therefore, quasi-judicial immunity in this context concerns not protection for the discretionary action of public officers, but rather a limited exception to the rule that ministerial officers are liable for their acts.