Chester K. GOUGE, Appellant–Plaintiff,

v.

**NORTHERN INDIANA COMMUTER TRANSPORTATION DISTRICT,**
Appellee–Defendant.

No. 46A03–9506–CV–183.

Court of Appeals of Indiana.

Aug. 22, 1996.

James M. Kapitan, Sachs & Hess, P.C., Hammond, Frank W. Petro, and F. Daniel Petro, Petro & Petro, Chicago, IL, for Appellant–Plaintiff.

Michael C. Harris and L. Charles Lukmann, III, Harris Welsh & Lukmann, Chesterton, for Appellee–Defendant.

## OPINION

GARRARD, Judge

Chester Gouge contends that the jury verdict entered in his favor with regard to his complaint under the Federal Employers' Liability Act (FELA)[1] was inadequate because the jury was not instructed that assumption of risk was no defense, and the court excluded evidence of subsequent remedial measures. Gouge further contends that he is entitled to certain costs in this case as the prevailing party. We affirm.

## FACTS

Gouge was a terminal carman for the Northern Indiana Commuter Transportation District (Northern Indiana), a commuter transportation district organized under Indiana law. Gouge's responsibilities included the filling of passenger cars with water. Because water would overflow from the filling of the passenger cars, a significant amount of ice would develop in the area during cold weather. On February 9, 1989, the area where the passenger cars were being filled with water had become very icy. While attempting to push one of the water nozzles into a receptor on a passenger car, Gouge slipped and fell, injuring his right knee. While there was no salt or sand available in the outside work area, there was evidence that there was salt in three nearby buildings. The buildings were kept open so that the workers could have access, and the workers were instructed that there was salt in the buildings.[2]

■ In an action under FELA, a plaintiff may recover upon showing that the defendant's negligence contributed in any way to the plaintiff's damages. *See O'Connell v. National R.R. Passenger Corp.*, 922 F.2d 1039, 1042 (2nd Cir.1991) (citation omitted). The jury found that Northern Indiana had been negligent and assessed damages in the amount of $146,840.00. However, the jury

also found that Gouge was 68% contributorily negligent.[3] Thus, Gouge's actual award against Northern Indiana was $46,988.80. While the court awarded costs to Gouge in the judgment order, it subsequently denied Gouge's petition for costs.

## ISSUES AND DISCUSSION

We address the following issues raised by Gouge:

I. Whether the trial court erred in failing to instruct the jury that it could not consider the defense of assumption of risk.

II. Whether the trial court erred in excluding evidence of subsequent remedial measures taken by Northern Indiana.

III. Whether the trial court erred in failing to award costs to Gouge.

## ISSUE I

■ Gouge first argues that the trial court committed reversible error by failing to instruct the jury that it could not consider the defense of assumption of risk.

■ We initially note that Gouge's argument regarding the jury instructions involves substantive issues arising from the application of FELA. Although FELA actions may be adjudicated in state courts and therein follow state procedural rules, the proceedings are governed by federal substantive law. *Eversole v. Consolidated Rail Corp.*, 551 N.E.2d 846, 850 (Ind.Ct.App.1990), *reh'g denied, trans. denied.* Thus, whether the trial court committed reversible error in failing to instruct the jury regarding assumption of risk is a question of federal law. *Id.* In determining whether the jury was adequately instructed, we consider the trial court's jury instructions as a whole. *Id.*

Under FELA, the defense of assumption of risk has been eliminated, while the defense of contributory negligence remains. 45 U.S.C. § 54; *Fashauer v. New Jersey Tran-*

---

**1.** 45 U.S.C. §§ 51 et seq.

**2.** There was conflicting evidence at trial regarding the availability of salt in nearby buildings. However, given the jury's finding of contributory negligence, we will view the evidence most favorable to the verdict.

**3.** Because the cases interpreting FELA generally use the phrase "contributory" negligence as opposed to "comparative," we shall do likewise. However, we again note that a finding of contributory negligence, even in excess of 50%, does not bar recovery under FELA.

*sit Rail Operations Inc.*, 57 F.3d 1269, 1274 (3rd Cir.1995), *reh'g denied.* With regard to the issue of whether a jury should be instructed regarding assumption of risk, the courts have reached varying conclusions. *See Jenkins v. Union Pacific R.R. Co.*, 22 F.3d 206 (9th Cir.1994) (reversible error for court not to instruct on assumption of risk); *O'Connell*, 922 F.2d 1039 (trial court properly refused to charge the jury regarding assumption of risk as defense was not at issue); *Taylor v. Burlington Northern R.R. Co.*, 787 F.2d 1309 (9th Cir.1986) (unnecessary to instruct jury on assumption of risk because doctrine was inapplicable); *Koshorek v. Pennsylvania R.R. Co.*, 318 F.2d 364 (3rd Cir.1963) (given difficult distinction between contributory negligence and assumption of risk, failure to instruct on assumption of risk reversible error); *Gowins v. Pennsylvania R.R. Co.*, 299 F.2d 431 (6th Cir.1962), *cert. denied* 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962) (if assumption of risk was not pled by the defense, no error in failure to instruct on this issue).

A recent case from the Third Circuit provides an excellent discussion of the issue before us, and we find its approach instructive. In *Fashauer*, 57 F.3d 1269, the plaintiff, a brakeman on a New Jersey transit train, slipped and fell on the wet floor of a vestibule between two train cars. The district court denied the plaintiff's request to charge the jury that assumption of the risk is not a defense in a FELA action, and the plaintiff argued, similarly to Gouge, that this failure "permitted the jury to reduce his recovery based on the fact that he continued to perform his job despite his knowledge that he was encountering a dangerous condition." *Id.* at 1273. The court acknowledged the concern of instructing the jury on a doctrine which is not a part of the case, stating that when possible "courts should spare juries intricate descriptions of opaque legal doctrines inapplicable to the case." *Id.* at 1275. However, the court went on to observe that, given the similarity between assumption of risk and contributory negligence, in certain cases the absence of explanatory instructions could confuse the jury. Thus, the court concluded that, when either the evidence at trial or the arguments of counsel creates a danger

that the jury may reduce a plaintiff's recovery based upon the theory of assumption of risk, the jury should be instructed regarding assumption of risk. *Id.* However, if the evidence and counsels' arguments do not create this danger, then a correct instruction on contributory negligence would be sufficient. *Id.* at 1275, 1280.

We find these conclusions to be well-founded. Thus, we must determine whether the evidence at trial presented a danger that the jury would reduce Gouge's recovery based upon conduct which in fact constitutes an assumption of risk. The *Fashauer* court discussed the difficulty in distinguishing between assumption of risk and contributory negligence, first noting the seemingly simple definitional differences between the two doctrines:

> At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist.

*Id.*, citing *Taylor*, 787 F.2d at 1316. In further discussing the distinctions between the two concepts, the court held:

> A plaintiff's recovery under the FELA never can be reduced on the basis that he or she implicitly consented to the risk by accepting employment with the railroad or by performing a task in the manner which the employer directed. This is true regardless of whether the plaintiff acted reasonably or unreasonably. Thus, even when a jury examining a plaintiff's position objectively would conclude that he acted unreasonably in accepting employment, or performing a task at all, such unreasonable actions for FELA purposes are characterized as assumption of risk rather than contributory negligence.
>
> [But] [w]hen reasonable alternatives besides quitting or refusing to perform the task in an unsafe way are available, a plaintiff is charged with acting with due care and will be held responsible for acting

unreasonably. In such circumstances "[w]hen the plaintiff *unreasonably* assumes a known risk, his fault in that regard is negligence and his damage award may be subject to apportionment."

*Id.* at 1280 (emphasis in original) (citation omitted).

In applying this analysis to the facts, the *Fashauer* court concluded that the evidence demonstrated contributory negligence rather than assumption of risk. The defense emphasized during argument that the plaintiff was an experienced employee and that the plaintiff had walked through the wet area many times that day before slipping. However, the court concluded that defense counsel did not use these observations to argue that the plaintiff should not have performed his job. Instead, counsel argued that the plaintiff acted unreasonably, in that there was a safer alternative to the manner in which he performed his task, and that the condition of the floor was a result of normal conditions, and not the defendant's negligence. *Id.* at 1280–81.

In examining the evidence presented at trial and the arguments made by defense counsel in the case before us, we conclude that the trial court acted appropriately in instructing the jury solely on the issue of contributory negligence. While counsel did emphasize in closing argument Gouge's experience in working on ice and his knowledge of the dangerous conditions, this was in the context of the defense's contention that salt was available in several nearby buildings and that the employees had been advised of this fact. Thus, the defense argued that Gouge could have performed his job in a safer manner by using salt from one of the buildings. The contention that Gouge unreasonably proceeded to work on the ice in an unsafe manner, when he was aware of the risks of ice and had available the opportunity to work in a safer manner by using salt, is an argument of contributory negligence. *See id.* at 1279 ("[W]hen the plaintiff has reasonable alterna-

tives available to him, he must act reasonably in performing his job. . . . [I]f he acts unreasonably, he is answerable for contributory negligence."). The defense also argued that, given Gouge's description of how he fell, Gouge may have been exerting more force than necessary on the hose in attaching it to the train car. This also is a contributory negligence argument. Although Gouge points to several areas of testimony and argument which, in isolation, may seem to present an assumption of risk argument, when viewed in the context of the entire record, the evidence is clearly a part of the defense's theory of contributory negligence, and we do not believe that there is a danger that the defense of assumption of risk was injected into the trial.

## ISSUE II

■ Gouge next contends that it was reversible error for the trial court to exclude evidence that Northern Indiana began placing salt outside the wash house after this accident, arguing that the evidence demonstrated the feasibility of placing salt buckets outside and rebutted the claim of contributory negligence.

■ While we apply federal law to the substance of Gouge's claims, Indiana law controls with regard to questions of evidence and procedure.[4] *Eversole,* 551 N.E.2d at 854. Whether to admit or exclude evidence on grounds of relevance is a determination entrusted to the discretion of the trial court. *Id.* We will reverse for an abuse of discretion only when the court's decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences to be drawn therefrom. *Id.* Further, erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Dynes v. Dynes,* 637 N.E.2d 1321, 1324 (Ind.Ct.App.1994), *trans. denied.*

---

4. While Gouge relied upon the Indiana Rules of Evidence at trial and in his brief of appellant, in his reply brief he also contends that "regardless of what Indiana law says, the admission of evidence in a FELA case is governed by federal law." (Reply Brief at 16). Gouge cites no au-

thority for this assertion and does not present any argument in the context of federal law. It is clear that state law governs the admissibility of evidence in state courts hearing a FELA proceeding and, in any event, Ind.Evidence Rule 407 is identical to the federal rule.

Ind.Evidence Rule 407 discusses the admissibility of evidence of subsequent remedial measures:

When after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

▮▮▮▮ Northern Indiana contends that Gouge failed to make an offer to prove and has thus waived review of this issue. During direct examination, when the trial court rules that a witness may not testify, the proponent of the excluded testimony must make an offer of proof to preserve the ruling for appellate review. *Donaldson v. Indianapolis Public Transp.*, 632 N.E.2d 1167, 1170 (Ind.Ct.App.1994). The purpose of an offer to prove is to enable both the trial court and the appellate court to determine the admissibility and relevance of the proffered testimony. *Henrichs v. Pivarnik*, 588 N.E.2d 537, 544 (Ind.Ct.App.1992). The failure to make an offer to prove results in a waiver of the asserted evidentiary error. *Id.*

Evid.R. 407 prohibits evidence of actual remedial measures which have been taken. While, during argument on this issue at trial, counsel for Gouge stated that salt boxes had been put out at the wash house after the accident, no attempt was made to make an offer of proof. Gouge argued that the location of the boxes would rebut the argument of contributory negligence and further contended that the evidence would show the feasibility of having salt outside. However, without knowing exactly where the salt boxes were located, we cannot say that the evidence would have rebutted the claim of contributory negligence. Further, during

Gouge's direct examination of James Lamm, his supervisor, Lamm testified without objection that it would be feasible to provide sand or salt in the area where the fall occurred. (R. 527). The absence of an offer to prove constitutes waiver of review and, additionally, Gouge has not suffered material prejudice from the exclusion of the evidence.

## ISSUE III

Finally, we address whether the trial court erred in denying the costs requested by Gouge.

Upon entry of the judgment in favor of Gouge on February 16, 1995, the court included in the order a finding of costs against Northern Indiana. On April 10, 1995, Gouge filed his petition for costs pursuant to Ind.Trial Rule 54(D), requesting $2,628.88, which included filing fees, court reporter fees, deposition fees, arbitration fees[5] and witness fees. Northern Indiana filed its objection to this petition on April 13, 1995. After a hearing on the matter the court denied Gouge's petition.

The Trial Rules provide for the recovery of costs:

(D) **Costs.** Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs in accordance with any provision of law; but costs against any governmental organization, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be computed and taxed by the clerk on one [1] day's notice. On motion served within five [5] days thereafter, the action of the clerk may be reviewed by the court.

T.R. 54(D).

▮▮▮ As T.R. 54 is mandatory, the trial court presumably concluded that Northern Indiana is a state agency and, therefore, may not be held liable for costs absent specific statutory authority. Gouge argues that, be-

---

5. In the brief of appellant, Gouge argues that he is entitled to arbitration fees and contends that he was the prevailing party at the arbitration. Northern Indiana counters that in fact it was a mediation, not an arbitration, that a settlement was not reached, and that the parties agreed to split the mediation fees. As Gouge does not dispute these contentions in his reply brief, we shall accept them as true. We remind counsel of the duty of complete honesty and candor with regard to statements made to this court.

cause Northern Indiana did not appeal or file a motion to correct errors within thirty days of the final judgment awarding costs, it was barred from arguing in response to the petition for costs that it is a state agency. We disagree.

Gouge filed his praecipe on March 14, 1995, to initiate the appeal of the judgment. T.R. 59(G) provides as follows: "[I]f a praecipe rather than a motion to correct error is filed by a party in the trial court, the opposing party may raise any grounds as cross-errors and also may raise any reasons to affirm the judgment directly in the appellate brief...." Thus, at this juncture Northern Indiana could have raised the granting of costs as error in a cross-appeal. When Gouge filed a petition for costs, Northern Indiana raised the issue of its being a state agency in its response. It is clear that there has been no waiver of this argument by Northern Indiana.

■■■ We thus address the merits of the issue. It is well-settled that the State and its agencies are not liable for ordinary court costs and fees absent specific statutory authority for their imposition. *State v. Eaton*, 581 N.E.2d 956, 960 (Ind.Ct.App.1991), *reh'g denied, trans. denied; State v. Puckett*, 531 N.E.2d 518, 527 (Ind.Ct.App.1988). Northern Indiana is a distinct municipal corporation created by state statute. *See* Ind. Code § 8–5–15. In *Lewis v. Northern Indiana Commuter Transp. Dist.*, 898 F.Supp. 596 (N.D.Ill.1995), the court underwent an analysis of whether Northern Indiana is a state agency and, therefore, entitled to immunity from suit in federal court under the Eleventh Amendment. We find the court's reasoning persuasive and agree with its conclusion that Northern Indiana is a state agency. *Id.* at 602. In the absence of any statutory authority which authorizes recovery of costs, we find that the trial court properly denied the petition for costs in its entirety.

Judgment affirmed.

HOFFMAN and RILEY, JJ., concur.