Brett A. **KELLEY**, Sr., Plaintiff,

v.

**CITY OF MICHIGAN CITY**, Northern Indiana Commuter Transportation District, Officer Bryan C. Warsanen, Officer McClintock, and Officer Timothy Richardson, Defendants.

No. 3:02 CV 626.

United States District Court, N.D. Indiana, South Bend Division.

Jan. 12, 2004.

Anna M. Hearn, Valparaiso, F. Amin Istrabadi, Valparaiso, IN, for Plaintiff/Petitioner.

Bruce P. Clark, Timothy M. Swan, Aimee Christine Zemaitis, and Stacy Jean Vasilak, Munster, IN, City of Michigan City, (Officers McClintock and Richardson), Charles F.G. Parkinson, L. Charles Lukmann III, (Northern Indiana Commuter Transportation District, Bryan C. Warsanen, Officer), for defendants

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

In this matter, there are two remaining motions for summary judgment which need to be addressed. The first motion for summary judgment was filed by Defendants City of Michigan City, and Officers McClintock, Richardson, and Zummak. However, it should be noted that Officer Zummak is no longer a party to this case due to his dismissal by Order of this Court on or about January 7, 2004. Therefore, only the City of Michigan City ("Michigan City") and Officers McClintock and Richardson will be considered in such motion for summary judgment. The second motion for summary judgment was filed by Defendants Northern Indiana Commuter Transportation District ("NICTD") and Officer Bryan C. Warsanen.[1] Due to the overlap of relevant facts between these two motions, they will be addressed contemporaneously herewith.

### I. Background

On or about May 22, 2001, Plaintiff, Brett A. Kelley Sr., ("Kelley"), was traveling on U.S. Highway 12. Kelley proceeded to move to the left lane to pass a vehicle, Officer Warsanen's vehicle, which

---

1. The docket in this case lists this Defendant as Officer Bryan C. Warsanen, although throughout various briefs he is referred to as Officer Bryan C. Waisanen. For purposes of a clean record, and to remain inline with the docket, the Defendant, throughout this Court's Order, will be referred to as Officer Warsanen.

was in front of him. Kelley then moved back into the right lane, in front of Officer Warsanen's vehicle. Officer Warsanen asserts he believed Kelley to be speeding and driving recklessly. Kelley, at some point, observed the police lights on Warsanen's vehicle behind him. Kelley did not stop immediately, but continued traveling on Highway 12, turning onto 8th street and stopping in front of a church. At some point, a crowd began to form outside the church. Kelley asked Warsanen why he had been pulled over, to which Warsanen responded that Kelley had been speeding. Warsanen then instructed Kelley to place his hands behind his back because he was under arrest. Kelley did not comply because he claims he did not know whether the NICTD Officer, Warsanen, a transit cop, had the authority to arrest him and take him to jail and therefore requested the presence of police officers from the City of Michigan City.

Officer Timothy Richardson was first to arrive on the scene. Officer Richardson informed Kelley that Officer Warsanen was in fact a real police officer and could arrest him. Warsanen then indicated that he was going to charge Kelley and arrest him for driving recklessly, resisting law enforcement and eluding him. Officer Richardson claims he then informed Kelley that he was under arrest and instructed him to place his hands behind his back, then Richardson grabbed Kelley's arm. Kelley pulled away, or he claims flinched, at which time Richardson placed his arm around Kelley's chest and attempted to lower him to the ground. After a few attempts, Richardson was able to secure Kelley on the ground. Officer McClintock had arrived on the scene and assisted Richardson with cuffing Kelley. Warsanen escorted Kelley, after being cuffed, to his squad car.

On or about August 5, 2002, Kelley filed his Complaint in the LaPorte County Su-

perior Court, which was subsequently removed to federal court. In said Complaint, Kelley alleges that on May 22, 2001, the following violations occurred:

1. He was deprived of his rights, privileges, and/or immunities secured by the Constitution, as enforced through 42 U.S.C. Section 1983. (Count I)

2. His rights secured by the Indiana Constitution, Article I Sections 11, 15 and 16 and the laws of Indiana were violated. (Count II)

3. The defendants were negligent under Indiana law, however, the Plaintiff filed a Notice of Withdrawal of these allegations against Michigan City and Officers Richardson and McClintock (Count III); and

4. Plaintiff seeks punitive damages against the defendants (Count IV).

## II. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.,* 164 F.3d 373 (7th Cir.1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Cel-*

*otex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.,* 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560 (7th Cir.1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. 2505. Applying the above standard this Court will now address the present motions for summary judgment.

### III. Discussion

#### 1. COUNT I

##### A. The Northern Indiana Commuter Transportation District (NICTD)

◼ The first issue to be addressed is NICTD's argument that because it is a state agency and not a "person," it is not subject to liability under 42 U.S.C. Section 1983 and therefore Count I of Plaintiff's Complaint must be dismissed against Defendant NICTD. In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that municipalities and other local government bodies are "persons" within the meaning of 42 U.S.C. Section 1983. Later, in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court clarified *Monell* and determined that states and their agencies are not "persons" within the meaning of Section 1983. Therefore, in deciding whether an entity is a "person" liable to suit under Section 1983, it is crucial to determine whether the entity is a state or state agency.

NICTD is an Indiana municipal corporation formed pursuant to Indiana Code sections 8–5–15–3 through 8–5–15–10 for the purpose of managing funds related to commuter rail service in certain counties in northern Indiana. The Plaintiff argues that had the legislature intended to create NICTD as a state agency, it could have done so in the enabling statute. However, the Courts which have addressed this specific issue, have concluded that NICTD is a state agency entitled to Eleventh Amendment immunity. *See, Lewis v. Northern Indiana Commuter Transportation District,* 898 F.Supp. 596 (N.D.Ill.1995).

◼ In *Lewis,* the Court underwent an analysis of whether NICTD is a state agency and, therefore, entitled to immunity from suit in federal court under the Eleventh Amendment. The *Lewis* Court reasoned that resolution of that issue depends on whether NICTD is a state agency. "If it is, it is entitled to immunity from suit in federal court under the Eleventh Amendment. If not, we can take jurisdiction over Lewis' case." *Id.* Precedent indicates that in deciding whether an entity is immune from suit, we must determine

whether it "is more like a county or city [or more] like an arm of the State." *Mount Healthy City School District v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (local school board resembled a county or city more than an arm of the state); *see also Kashani v. Purdue University,* 813 F.2d 843, 845 (7th Cir.) (state university resembled an arm of the state more than a city or county), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987). The *Lewis* Court used *Kashani,* a Section 1983 case in which Purdue University successfully invoked immunity under the Eleventh Amendment, as a guidepost in making their determination. *Kashani* sets forth three factors to consider: "the extent of the entity's financial autonomy from the state," its "general legal status," and "whether it serve[s] the state as a whole or only a region." 813 F.2d at 845–47. The *Lewis* Court address each factor in detail, concluding that, "[a]s the above analysis reveals, NICTD has attributes of both a state agency and a political subdivision." "Nevertheless, we are persuaded that it is sufficiently dependent on the State of Indiana that it should be viewed as an arm of the state for Eleventh Amendment purposes." *Lewis* at 601.

The Court in *Gouge v. Northern Indiana Commuter Transportation District,* 670 N.E.2d 363, 369 (Ind.App.1996), found the *Lewis* Court's reasoning persuasive and agreed with its conclusion that NICTD is a state agency. *See also, Phillips v. Northern Indiana Commuter Transportation District,* 1994 WL 866082 (N.D.Ind.1994). Because NICTD's status as a state agency has been determined as such by these courts, a similar conclusion is made in this instance for the purpose of determining that NICTD is not a "person" subject to suit under 42 U.S.C. Section 1983. Therefore, summary judgment in NICTD's favor and against Plaintiff on Count I of the Complaint is appropriate.

## B. Officer Bryan C. Warsanen

Defendant Warsanen argues that he is entitled to qualified immunity from liability under 42 U.S.C. Section 1983. Qualified immunity is an affirmative defense for government officials in Section 1983 suits which allege constitutional violations. The doctrine shields officials from civil damages liability so long as their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine whether a government official is protected by qualified immunity, courts make two inquiries: (1) whether the plaintiff suffered a constitutional injury, *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), and (2) whether "an objectively reasonable official would have believed that his conduct was lawful 'in light of clearly established law and the information that the official possessed at the time of his allegedly unlawful conduct,'" *Kelley v. LaForce,* 288 F.3d 1, 7 (1st Cir.2002).

■ For qualified immunity purposes in this matter the standard seems to be whether a reasonable officer would have believed, under similar circumstances, that he had probable cause to arrest Kelley. *See, Jones v. Watson,* 106 F.3d 774, 778 (7th Cir.1997). The initial problem for the Court in making such a determination is the dispute between the parties as to the events leading up to and before the arrest. *Russell* is instructive in this instance. *Russell v. Board of Trustees of the University of Illinois at Chicago,* 243 F.3d 336, 340 (7th Cir.2001), held that summary judgment is a singularly inappropriate time to resolve a "he said, she said" kind of dispute. *See also, Market v. Illinois Bell Telephone Company,* 2003 WL 22697284 (N.D.Ill. November 13, 2003). With defer-

ence to all parties, like *Russell*, this seems to be a case of "he said, she said," on material facts pertinent to the decision of Officer Warsanen's liability under Section 1983 in his individual capacity, and thus inappropriate for summary judgment purposes.

## C. Officers Richardson and McClintock

■ Likewise, in line with the reasoning behind denial of Officer Warsanen's motion for summary judgment on Count I of Plaintiff's Complaint, this seems to be a case of "he said, she said," on material facts pertinent to the decision of Officer Richardson's and McClintock's liability under Section 1983, in their individual capacity as well, and thus, in like manner inappropriate for summary judgment purposes.

## D. Michigan City and Officer's Richardson and McClintock in Their Official Capacities

■ With regard to the Plaintiff's claims against Michigan City, it should be noted that under Section 1983, a municipality can only be held liable when the municipality itself actually causes the constitutional violation at issue. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), *citing Monell*. Since *Monell*, Courts have held that in order for a plaintiff to recover against a municipality under Section 1983, the plaintiff must demonstrate that the municipality was the moving force behind the injury alleged by showing that the municipality had a policy or custom that caused the plaintiff's injury. *See, Board of Commissioners v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In order to maintain a Section 1983 claim against Michigan City and Officers Richardson and McClintock, in their official capacity, Kelley must demonstrate that an official policy or custom was the cause of his constitutional injury. *See, Monell*, 436 U.S. at 693, 98 S.Ct. 2018.

However, with genuine issues of material fact still disputed, such cannot be determined as a matter of law at this time. Therefore, summary judgment cannot be granted to Michigan City and Officers Richardson and McClintock, in their official capacities.

## 2. COUNT II

Plaintiff, Kelley has alleged that the moving defendants have violated his rights under Article I, Sections 11, 15, and 16 of the Indiana Constitution. It should be noted that the Indiana Court of Appeals has distinguished between causes arising out of Indiana's tort law and those cases arising out of violations of the Indiana Constitution. *Meury v. Eagle–Union Community School Corp.*, 714 N.E.2d 233, 242 (Ind.App.1999). Based on such, this Court does not deem further analysis of such issue necessary in the current matter.

■ Article I Section 16 of the Indiana Constitution establishes, "[e]xcessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense." The Plaintiff was booked and held at the LaPorte County Jail, and any bail or fine paid by the Plaintiff was imposed by a LaPorte County Superior Court, not the City of Michigan City, its officers, NICTD, or Officer Warsanen. Further, there is no evidence presented of cruel or unusual punishment in this case. Therefore, all defendants in this matter are granted summary judgment on Count II of Plaintiff's Complaint in regard to claims asserted under Article I Section 16 of the Indiana Constitution.

■ Section 15 of Article I of the Indiana Constitution holds that "no person

arrested, or confined in jail, shall be treated with unnecessary rigor." Lastly, Section 11 holds that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Due to the existence of genuine issues of material fact, Count II of Plaintiff's Complaint regarding claims brought under Article I Sections 11 and 15 of the Indiana Constitution, are not proper for summary judgment and therefore Defendants' motion for summary judgment as to these claims is denied.

### 3. COUNT III

With respect to Count III of the Plaintiff's Complaint, the Plaintiff is not proceeding on that Count against Michigan City or its police officers, Richardson and McClintock. Kelley agrees that his claims relating to Indiana tort claims are barred with respect to Defendants Michigan City and Officers Richardson and McClintock because he did not file a timely Notice of Tort Claim. However, as it relates to Defendants NICTD and Officer Warsanen, the crux of the dispute rests on timing.

Kelley argues NICTD and Warsanen are now speaking out of both sides of their mouth. Kelley claims that because NICTD argued it was a state agency for purposes of Eleventh Amendment Immunity, that it cannot now argue that it is a political subdivision or municipal corporation for purposes of the Indiana Tort Claims Act. Under the Indiana Tort Claims Act, the notice requirement for municipal corporations is 180 days, whereas with respect to state agencies, a 270–day notice period applies. This Court has concluded that NICTD is a state agency for

purposes of Eleventh Amendment immunity.

However, according to precedent, the notice of claims under Ind.Code 34–13–3–8 regarding a political subdivision or municipal corporation is not affected by its status as a state agency for purposes of Eleventh Amendment immunity. This is illustrious in cases where universities and colleges are arms of the state for purposes of Eleventh Amendment immunity but for purposes of notice are considered political subdivisions or municipal corporations. *See, Schoeberlein v. Purdue University,* 129 Ill.2d 372, 135 Ill.Dec. 787, 544 N.E.2d 283 (1989); *Van Valkenburg v. Warner,* 602 N.E.2d 1046 (Ind.Ct.App.1992). Thus, the NICTD is entitled to notice of a claim within 180 days of the occurrence. Because Kelley failed to file such notice of claim with NICTD and Officer Warsanen within the prescribed period, summary judgment on Count III of Plaintiff's Complaint is granted in favor of Defendants, NICTD and Officer Warsanen.

### 4. COUNT IV

The Supreme Court held that "a municipality is immune from punitive damages" under Section 1983. *Herrera v. Hite–Carter,* 2003 WL 22867759 (N.D.Ill. December 2, 2003), *citing, City of Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Because the law is clear on this matter the Plaintiff cannot recover punitive damages under Section 1983 against the moving Defendants in their official capacities. However the individual officers may be held liable for such damages. The parties appear to agree that punitive damages are available on proof that the individual officers acted with willful indifference to Kelley's constitutional rights. *See, Turner v. Sheriff of Marion County,* 94 F.Supp.2d

966, 983 (S.D.Ind.2000); *Stachniak v. Hayes*, 989 F.2d 914, 928 (7th Cir.1993).

Additionally, Plaintiff seeks punitive damages under the law of the State of Indiana. The law however clearly states that Plaintiff is not allowed to seek punitive damages against a governmental entity. *See, Indiana Department of Public Welfare v. Rynard*, 275 Ind. 212, 472 N.E.2d 888 (1981), *See also*, Indiana Code 34–13–3–4. As punitive damages pertain to the Officers in their individual capacities, under Indiana law, punitive damages may be awarded only upon a showing by clear and convincing evidence that the defendants "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference to the consequences." *Bud Wolf Chevrolet v. Robertson*, 519 N.E.2d 135, 136 (Ind.1988).

With the existence of genuine issues of material fact as to the events that occurred on May 22, 2001, summary judgment cannot be granted on Plaintiff's claims of punitive damages as they pertain to the Officers in their individual capacities.

### IV. Conclusion

Based on the forgoing, as it pertains to Count I of Plaintiff's Complaint, summary judgment is **GRANTED** in favor of Defendant, NICTD as well as Officer Warsanen in his official capacity. However, summary judgement on Count I of Plaintiff's Complaint is **DENIED** as it pertains to Michigan City, and Officers Richardson and McClintock in their official and individual capacities, as well as Officer Warsanen in his individual capacity. In regard to Count II of Plaintiff's Complaint, Plaintiff's claims brought under Article I Sections 11 and 15 are not proper for summary judgment. However, Plaintiff's claims brought under Article I Section 16 of the Indiana Constitution are proper for summary judgment. Thus the Defendants' motion for summary judgment is **GRANTED** as it pertains to claims asserted by the Plaintiff in Count II of his Complaint under Article I Section 16 of the Indiana Constitution and **DENIED** as it pertains to claims asserted by the Plaintiff in Count II of his Complaint under Article I Sections 11 and 15 of the Indiana Constitution. Plaintiff brought Count III of his Complaint only against Defendants, NICTD and Officer Warsanen. NICTD and Officer Warsanen thereafter moved for summary judgment to be entered in their favor and such is now **GRANTED**. The Defendants, NICTD and Officer Warsanen are entitled to summary judgment on Plaintiff's claims brought under Count III of his Complaint. Count IV of Plaintiff's Complaint involves punitive damages. Summary judgment on Count IV is **GRANTED** in part and **DENIED** in part. Upon proper showing by the Plaintiff, the Officers, in their individual capacities, may be found liable for such damages.

**IT IS SO ORDERED.**